United States District Court
Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CHAD GLOVER,<br>Plaintiff,<br>v.<br>WELLS FARGO BANK N.A, et al.,<br>Defendants. | Case No. 26-mc-80264-TSH<br><br>**ORDER GRANTING MOTION TO COMPEL**<br><br>Re: Dkt. No. 8 |

## I. INTRODUCTION

Plaintiff Chad Glover moves for an order compelling non-party Wells Fargo Bank, National Association to produce documents responsive to a subpoena issued in *Glover v. Sea Ern LLC, et al.*, No. 2:25-cv-02385-TL, pending in the United States District Court for the Western District of Washington. ECF No. 8. Wells Fargo has not filed an opposition, and the time to do so has passed. *See* Civ. L.R. 7-3(a). The Court finds this matter suitable for disposition without oral argument and **VACATES** the October 22, 2026 hearing. Civ. L.R. 7-1(b). For the reasons stated below, the Court **GRANTS** the motion.

## II. BACKGROUND

### A. The Subpoena

The underlying action is an admiralty action concerning Glover's claim for marine salvage of the F/V Sea Ern, a 125-foot fishing vessel that was sinking in Alaskan waters. Mot. at 3. According to Glover, approximately two years before the casualty, Sea Ern LLC obtained a preferred ship mortgage from Wells Fargo and, in connection with obtaining that mortgage, represented to Wells Fargo that the vessel was valued at approximately $2.5 million to $3 million. *Id.*

United States District Court
Northern District of California

On June 22, 2026, Glover caused a subpoena duces tecum to be issued from the United States District Court for the Western District of Washington and directed to Wells Fargo. Jacobsen Decl. ¶ 3, ECF No. 1-5. The subpoena identifies the underlying action as *Chad Glover v. Sea Ern LLC*, No. 2:25-cv-02385-TL. *Id.* & Ex. A, ECF No. 1-6. The subpoena commanded Wells Fargo to produce documents on July 15, 2026, at the offices of McGuinn, Hillsman & Palefsky, 220 Jackson Street, Suite 350, San Francisco, California 94111. *Id.* ¶ 4 & Ex. A. The subpoena seeks documents relating to Wells Fargo's 2023 preferred ship mortgage on the F/V Sea Ern. *Id*. Specifically, Glover seeks documents and communications concerning the value of the F/V Sea Ern in connection with the mortgage, including documents concerning the value attributed to the vessel by Wells Fargo or Sea Ern LLC. *Id*. The subpoena also seeks credit-enhancement documentation, including personal loan guarantees, covenants supporting any credit-enhancement agreement, the loan agreement, the vessel mortgage, and communications with Wells Fargo concerning the mortgage. *Id*.

**B. Service and Wells Fargo's Response**

On June 23, 2026, a registered process server delivered the subpoena to Christine Hong at 464 California Street in San Francisco, California. Jacobsen Decl. ¶ 5 & Ex. C; Loupe Decl. ¶ 2 & Ex. 1, ECF Nos. 1-2. The affidavit of service identifies Ms. Hong as "authorized to accept." Jacobsen Decl., Ex. C. Glover describes Ms. Hong as a Wells Fargo branch manager. Loupe Decl. ¶ 2. Wells Fargo's 2026 bank annual report filed with the Washington Secretary of State lists 464 California Street as its principal office. Jacobsen Decl. ¶ 6 & Ex. D.

Glover's counsel's office followed up by overnight letter on July 7, 2026, and by telephone. Loupe Decl. ¶¶ 3-4 & Ex. 2. On July 13, Ms. Hong told Glover's counsel's office that "upon service of the subpoena . . . she sent the documents to Wells Fargo's legal department." *Id.* ¶ 5. Wells Fargo's legal department answering service then provided a reference number and a contact in its subpoena department. *Id.* ¶ 6. On July 15, the date set for production, Wells Fargo case manager Dorinda McCullum told Glover's counsel that she had forwarded the documents to another department for review. Jacobsen Decl. ¶ 9. No one appeared for Wells Fargo at the deposition, which counsel closed on the record at 3:15 p.m. *Id.* ¶ 10. On July 31 Ms. McCullum

stated that she had forwarded the subpoena to Wells Fargo's "complex law department" and would follow up. Loupe Decl. ¶ 9.

**C. Procedural History**

On August 18, 2026, Glover filed this miscellaneous action seeking an order to show cause why Wells Fargo should not be held in civil contempt. ECF No. 1. Two days later, Glover served the motion and supporting papers on Wells Fargo's agent for service of process in Sacramento and mailed copies to three other Wells Fargo addresses. Second Loupe Decl. ¶ 6, ECF No. 9. On August 24, 2026, the Court denied the motion without prejudice because the record did not identify any prior order compelling Wells Fargo to comply with the subpoena. ECF No. 3; *Glover v. Wells Fargo Bank N.A*, 2026 WL 2479737 (N.D. Cal. Aug. 24, 2026). The Court explained that Glover must first seek an order compelling compliance and that, if Wells Fargo thereafter fails to obey such an order without adequate excuse, Glover may seek relief under Federal Rule of Civil Procedure 45(g). *Id.*

Glover's counsel's office continued to contact Ms. McCullum. Second Loupe Decl. ¶¶ 2-5. On August 18, Ms. McCullum confirmed that the department to which she had referred the matter knew that a federal subpoena had been served and had not been answered. *Id.* ¶ 3. On September 2 she stated that she had sent that department three emails and would send another marked urgent. *Id.* ¶ 5. As of September 10, 2026, Wells Fargo had not produced a single document. *Id.* ¶ 7.

On September 10, 2026, Glover filed the present motion, which asks the Court to order Wells Fargo to produce all non-privileged responsive documents by September 21, 2026. Mot. at 7. Glover served the motion the same day on Wells Fargo's agent for service of process by legal messenger and by mail to three additional Wells Fargo addresses. *Id.* at 9.

Wells Fargo has not appeared in this action.

## III. LEGAL STANDARD

A subpoena may command a non-party to produce designated documents, electronically stored information, or tangible things in its possession, custody, or control at a specified time and place. Fed. R. Civ. P. 45(a)(1)(A)(iii). The place of production must be within 100 miles of

where the person resides, is employed, or regularly transacts business in person. Fed. R. Civ. P. 45(c)(2)(A). A person commanded to produce documents may serve a written objection, which "must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served." Fed. R. Civ. P. 45(d)(2)(B). If an objection is made, the serving party may move the court for the district where compliance is required for an order compelling production, and the order "must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance." Fed. R. Civ. P. 45(d)(2)(B)(i)-(ii); *see Legal Voice v. Stormans Inc.*, 738 F.3d 1178, 1184 (9th Cir. 2013) (holding that Rule 45(d)(2)(B)(ii) requires the district court to shift a non-party's costs of compliance "if those costs are significant").

A non-party's failure to timely object to a Rule 45 subpoena duces tecum "generally requires the court to find that any objections have been waived." *Moon v. SCP Pool Corp.*, 232 F.R.D. 633, 636 (C.D. Cal. 2005); *see Richmark Corp. v. Timber Falling Consultants*, 959 F.2d 1468, 1473 (9th Cir. 1992) ("It is well established that a failure to object to discovery requests within the time required constitutes a waiver of any objection."). Courts have nonetheless declined to find waiver in unusual circumstances, such as where the subpoena is overbroad on its face and exceeds the bounds of fair discovery and the subpoenaed witness is a non-party acting in good faith. *Moon*, 232 F.R.D. at 636 (collecting cases).

"[T]he permissible scope of a subpoena to a non-party is the same as that for party discovery." *City of San Jose v. JUM Glob., LLC*, 2018 WL 4520981, at *2 (N.D. Cal. Sept. 21, 2018) (citing Fed. R. Civ. P. 45, advisory committee notes to 1991 amendment, subdivision (a) ("The non-party witness is subject to the same scope of discovery under this rule as that person would be as a party to whom a request is addressed pursuant to Rule 34.")). Parties may obtain discovery of "any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1). On motion or on its own, the court must limit discovery that "can be obtained from some other source that is more convenient, less burdensome, or less expensive." Fed. R. Civ. P. 26(b)(2)(C)(i). Where a non-party is the target of discovery, "the 'necessary' restriction may be broader." *Dart Indus. Co. v. Westwood Chem. Co.*, 649 F.2d 646, 649 (9th Cir. 1980).

## IV. DISCUSSION

### A. Validity and Service of the Subpoena

The subpoena designates San Francisco as the place of compliance. Jacobsen Decl. Ex. A at 3. This Court is therefore the court for the district where compliance is required and the proper forum for this motion. Fed. R. Civ. P. 45(d)(2)(B)(i) ("At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection.").

The subpoena issued from the court where the underlying action is pending, states that action's title and civil-action number, is signed by Glover's counsel of record in that action, specifies the time and place of production, and sets out the text of Rule 45(d) and (e). Jacobsen Decl. ¶¶ 3-4 & Ex. A at 3-5; *see* Fed. R. Civ. P. 45(a)(1)-(3). The place of production is in San Francisco, where Wells Fargo maintains its principal office. Jacobsen Decl., Ex. D; *see* Fed. R. Civ. P. 45(c)(2)(A). The record also indicates that defense counsel in the underlying action was copied on the June 22, 2026 transmittal letter and attended the July 15 deposition by telephone, and no party has objected to the subpoena. Jacobsen Decl., Ex. A at 2; *id.*, Ex. B at 3 (Tr. 6:16-18); *see* Fed. R. Civ. P. 45(a)(4).

Rule 45(b)(1) provides that serving a subpoena "requires delivering a copy to the named person." Glover's process server attests that she delivered the subpoena to Ms. Hong, whom the affidavit identifies as authorized to accept service, at Wells Fargo's principal office. Jacobsen Decl., Ex. C at 1. Glover's motion goes further and describes Ms. Hong as Wells Fargo's "branch manager and corporate officer," citing Exhibits C and D to the Jacobsen Declaration. Mot. at 6. Neither exhibit supports the latter description. Exhibit C is the affidavit of service, and Exhibit D lists Wells Fargo's directors and executive officers, among whom Ms. Hong does not appear. While the Court does not rely on that characterization, it need not define the outer limits of Rule 45(b)(1) as applied to service on a corporation through a branch employee. Here, the affidavit of service is uncontradicted, and the record shows that the subpoena reached the Wells Fargo personnel responsible for responding to it. Ms. Hong forwarded it to the legal department, the legal department assigned it a reference number and a case manager, and the case manager

referred it to a separate department that, by August 18, knew that a federal subpoena had been served and had not been answered. Loupe Decl. ¶¶ 5-6, 9; Jacobsen Decl. ¶ 9; Second Loupe Decl. ¶ 3. Because Wells Fargo has not appeared, it has not addressed whether Ms. Hong was authorized to receive service. In addition, Glover served both the contempt motion papers and the present motion on Wells Fargo's agent for service of process. Second Loupe Decl. ¶ 6; Mot. at 9. On this record, the Court finds sufficient evidence of delivery to Wells Fargo and actual notice since June 23, 2026.

**B. Waiver of Objections**

Wells Fargo was required to serve any objection by July 7, 2026, fourteen days after service and before the July 15 compliance date. Fed. R. Civ. P. 45(d)(2)(B). It served no objection then or since, and it has not moved to quash or modify the subpoena. Wells Fargo has therefore waived its ordinary, nonprivileged objections on this record. *See Moon*, 232 F.R.D. at 636 ("A nonparty's failure to timely make objections to a Rule 45 subpoena duces tecum generally requires the court to find that any objections have been waived.") (citing *In re DG Acquisition Corp.,* 151 F.3d 75, 81 (2d Cir. 1998); *Creative Gifts, Inc. v. UFO,* 183 F.R.D. 568, 570 (D.N.M. 1998)). Nor does the record present unusual circumstances that would justify excusing that waiver. Wells Fargo has had actual notice of the subpoena for months, has acknowledged it internally, and has not communicated any position to Glover, much less an objection. As discussed below, the Court limits the broadest request to keep the ordered production within the bounds of fair discovery. *See id.*

Because Glover seeks only non-privileged documents, ECF No. 8 at 7, the Court need not decide whether Wells Fargo's failure to object also waived any claim of privilege. Wells Fargo may withhold a responsive document based on privilege or work-product protection only by complying with Rule 45(e)(2)(A).

**C. Relevance, Proportionality, and Scope**

Although Wells Fargo's objections are waived, the Court must still limit discovery on its own where Rule 26(b)(2)(C) requires. Fed. R. Civ. P. 26(b)(2)(C).

The subpoena seeks relevant information. The requested documents concern Wells

Fargo's 2023 preferred ship mortgage on the F/V Sea Ern and communications or records concerning the vessel's value in connection with that mortgage. In fixing a salvage award, admiralty courts consider, among other things, "the value of the property saved." *Saint Paul Marine Transp. Corp. v. Cerro Sales Corp.,* 505 F.2d 1115, 1120 (9th Cir. 1974) (citing *The Blackwall*, 77 U.S. 1, 14 (1869)). Glover contends that vessel value is a central issue in the underlying action and that Sea Ern LLC represented the vessel's value to Wells Fargo when it obtained the 2023 mortgage. Mot. at 3, 5. Records reflecting the value that Wells Fargo or Sea Ern attributed to the F/V Sea Ern, such as appraisals, credit analyses, or related communications, bear on that issue, although a valuation made in connection with the 2023 mortgage does not itself establish the vessel's value at the time of salvage.

The Court has also considered whether the requested documents can be obtained from Sea Ern LLC, a party to the underlying action. *See* Fed. R. Civ. P. 26(b)(2)(C)(i); *Moon*, 232 F.R.D. at 638 (finding undue burden where the requesting party could "more easily and inexpensively obtain the documents from defendant") (citing *Dart Industries*, 649 F.2d at 649). Some items, such as the loan agreement and the vessel mortgage, may well be available from Sea Ern. Indeed, the promissory note attached to the subpoena bears Sea Ern production numbers. Jacobsen Decl., Ex. A at 7-13. The core of the subpoena, however, seeks Wells Fargo's own records of how the vessel was valued in connection with the loan, and its communications about the loan. Sea Ern would not necessarily possess Wells Fargo's internal valuation analyses or communications in substantially equivalent form. The loan agreement and mortgage may provide context for the valuation and underwriting records sought. Wells Fargo has not identified any specific burden of producing those documents from the relevant loan file. Thus, Rule 26(b)(2)(C) does not require the Court to exclude those items.

Two requests warrant clarification so that Wells Fargo's obligations are specific and definite. Request No. 2 contains no temporal limit. *See* Jacobsen Decl., Ex. A at 6 ("Produce all documents, communications, etc., that concern or are related to the value by the bank or Sea Em LLC regarding the F N Sea Em."). The Court construes it to reach documents and communications concerning the value of the F/V Sea Ern that Wells Fargo created or received in

connection with its lending relationship with Sea Ern LLC secured by the vessel, including the 2023 mortgage loan and its administration. Request No. 3(e) seeks "[a]ny and all communications with Wells Fargo, in any format, regarding the mortgage." *Id*. The Court construes that request to reach communications between Wells Fargo and another person, including Sea Ern LLC, its members or managers, any guarantor, and any appraiser or surveyor, concerning the vessel's valuation, the underwriting or origination of the 2023 mortgage, credit enhancement or guarantees supporting it, or any subsequent appraisal or reassessment of the vessel as collateral. Routine servicing communications unrelated to those subjects are excluded. Wells Fargo's internal communications concerning the value of the vessel fall within Requests No. 1 and 2. The Court reads the phrase "documents, communications, etc." in Requests No. 1 and 2 to mean documents and electronically stored information, including communications. So construed, the subpoena is relevant and proportional to the needs of the case. *See* Fed. R. Civ. P. 45(g) advisory committee's note to 2013 amendment (an order compelling compliance "might not require all the compliance sought by the subpoena").

**D. Deadline, Place, and Conditions of Production**

Glover asks the Court to order production by September 21, 2026. Mot. at 7. That date precedes Wells Fargo's September 24, 2026 deadline to oppose the motion. *See* Civ. L.R. 7-3(a). The Court therefore sets a new deadline below.[1]

Glover also asks that production be made to his counsel by overnight delivery. Mot. at 7. Glover's counsel is in Seattle. *Id.* at 8. A subpoena may command production only at a place within 100 miles of where the recipient resides, is employed, or regularly transacts business in person, Fed. R. Civ. P. 45(c)(2)(A), and the place of compliance designated in this subpoena is San Francisco. Jacobsen Decl., Ex. A at 3. Parties often arrange for production by delivery or electronic transmission instead, and the 2013 amendments to Rule 45 do not limit their ability to do so. Fed. R. Civ. P. 45(c) advisory committee's note to 2013 amendment. Accordingly, Wells Fargo may comply either at the designated place of compliance or, at its election, by overnight

[1] The subpoena also commanded Wells Fargo to appear for a deposition. Jacobsen Decl., Ex. A at 3. Glover does not ask the Court to compel testimony, and this Order does not require it.

United States District Court
Northern District of California

delivery or secure electronic transmission to Glover's counsel.

Glover's counsel offered to pay any additional copying costs. Jacobsen Decl., Ex. A at 1. Wells Fargo has not asserted that compliance will impose any expense, and nothing in the record suggests that producing the file for a single commercial loan and related communications will impose significant expense. The Court therefore does not shift costs at this time, but Glover shall pay Wells Fargo's reasonable copying costs upon request. This is without prejudice to Wells Fargo seeking relief upon a showing of significant expense. *See Legal Voice*, 738 F.3d at 1184.

Finally, the Court notes the requested records may contain non-public financial information of Sea Ern LLC and any guarantor.[2] If a protective order has been entered in the underlying action, Wells Fargo may designate produced material under that order. Absent such an order, Glover shall use documents produced under this Order solely for purposes of the underlying action.

## V. CONCLUSION

For the reasons stated above, the Court **GRANTS** Glover's motion to compel and **ORDERS** as follows:

1. Within two court days of the date of this Order, Glover shall serve a copy of this Order on Wells Fargo by personal delivery to its registered agent for service of process in California and by mail to each Wells Fargo address listed in the certificate of service to ECF No. 8. Glover shall also transmit a copy to the Wells Fargo legal department personnel with whom his counsel has communicated concerning the subpoena. Glover shall file proof of service within three court days after service.

2. Within 21 days of this Order, Wells Fargo shall produce all non-privileged documents and electronically stored information in its possession, custody, or control that are responsive to Requests No. 1, 2, and 3(a) through 3(e) of Exhibit A to the subpoena

[2] To the extent the Gramm-Leach-Bliley Act applies to the requested records, it permits a financial institution to disclose nonpublic personal information to respond to judicial process, including a properly authorized subpoena. 15 U.S.C. § 6802(e)(8)). Thus, "courts have generally found that the GLBA does not provide a legal basis for quashing a properly executed subpoena." *Terteryan v. Nissan Motor Acceptance Corp.*, 2017 WL 3576844, at *3 (C.D. Cal. July 5, 2017) (collecting cases).

United States District Court
Northern District of California

served on June 23, 2026 (ECF No. 1-6 at 6), as construed above.

3. Wells Fargo shall produce the documents at the offices of McGuinn, Hillsman & Palefsky, 220 Jackson Street, Suite 350, San Francisco, California 94111, or, at its election, by overnight delivery to Stacey & Jacobsen, PLLC, 4039 21st Avenue West, Suite 401, Seattle, Washington 98199, or by secure electronic transmission to Glover's counsel. Wells Fargo shall produce documents as they are kept in the ordinary course of business or organized and labeled to correspond to the categories in the subpoena and shall produce electronically stored information in a form in which it is ordinarily maintained or in a reasonably usable form. Fed. R. Civ. P. 45(e)(1)(A)-(B).

4. If Wells Fargo withholds any responsive document based on privilege or work-product protection, it shall, by the same deadline, expressly make the claim and serve a log that complies with Rule 45(e)(2)(A).

5. If a reasonable search locates no responsive documents for a particular request, Wells Fargo shall notify Glover's counsel in writing by the production deadline.

6. Glover shall pay Wells Fargo's reasonable copying costs upon request. If a protective order has been entered in the underlying action, Wells Fargo may designate produced material under that order. Absent such an order, Glover shall use documents produced under this Order solely for purposes of the underlying action.

7. Wells Fargo is advised that failure to comply with this Order without adequate excuse may result in contempt proceedings under Federal Rule of Civil Procedure 45(g).

**IT IS SO ORDERED.**

Dated: October 15, 2026

THOMAS S. HIXSON
United States Magistrate Judge